IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FABIAN SHAW, COLLINS KWABENA, and DALE DUCLION, individually and on behalf of all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. H-18-3200 |
| HELIX ENERGY SOLUTIONS GROUP, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending in this case that has been referred for all further pretrial proceedings is Defendant's Motion for Dismissal of Class Action Claim and Certain Other Claims in Plaintiffs' First Amended Class Action Complaint (Document No. 15).[1] Having considered the motion, the response in opposition, the additional briefing, the allegations in Plaintiff's First Amended Class Action Complaint, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Dismissal of Class Action Claim and Certain Other Claims in Plaintiffs' First Amended Class Action Complaint (Document No. 15) be GRANTED IN PART.

### I. Background

This is an employment discrimination case. The three named Plaintiffs, Fabian Shaw ("Shaw"), Collins Kwabena ("Kwabena"), and Dale Duclion ("Duclion") were all employed by Helix Energy Solutions Group, Inc. ("Helix") and worked in various positions on two of Helix's

---

[1] Defendant's Initial Motion to Dismiss (Document No. 7), which addressed Plaintiff's Original Complaint, and which has been superseded by the current Motion to Dismiss, is MOOT.

drilling rigs, the Q5000 and the Q4000. Shaw and Kwabena are Black and Duclion is White. Shaw and Kwabena allege that they were passed over for various promotions in favor of less qualified White employees and were subjected to a racially hostile work environment. Duclion alleges that he was retaliated against, and others were promoted over him, after he complained to management about the racial discrimination he witnessed as against Shaw. Plaintiffs Shaw and Kwabena allege disparate treatment race discrimination claims against Helix under Title VII (count three), a hostile work environment claim against Helix under Title VII (count five), and a disparate impact race discrimination claim against Helix under Title VII (count six). Shaw, Kwabena and Duclion also allege retaliation claims against Helix under both § 1981 and Title VII (count two and count four). Finally, Plaintiffs allege, on behalf on themselves and a class of "all black persons employed or formerly employed by Defendant in the United States at any time from 2015 to the present, who have been, or continue to be, or may be in the future, adversely affected by Defendant's racially discriminatory employment policies and practices" claims of race discrimination under § 1981 (count one). Plaintiffs' First Amended Class Action Complaint (Document No. 11). Helix, in its Motion to Dismiss, seeks: (1) dismissal of the class action claim(s); (2) dismissal, on limitations grounds, of Shaw's Title VII claims and discrimination allegations that pre-date November 18, 2016, Shaw's § 1981 failure to promote claims and allegations that predate September 10, 2016, Kwabena's Title VII claims and discrimination allegations that pre-date November 15, 2016, and Kwabena's § 1981 failure to promote claims and allegations that pre-date September 10, 2016; and (3) dismissal of Shaw and Kwabena's disparate impact claims under Title VII.

## II. Rule 12(b)(6) Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

3

**III.  Discussion – Class Action Claims**

Plaintiffs allege in their First Amended Class Action Complaint that Helix

> has engaged in a continuing pattern of racial discrimination against black employees since 2008, and prior to that date. Defendant discriminates against black employees by (1) maintaining written and/or unwritten policies and practices for performance evaluations of employees that allowed biased and inconsistent determinations to the detriment of black employees; (2) maintaining written and/or unwritten policies and practices that utilize the inherently unreliable results of the evaluation system to make decisions on promotions and compensation; (3) maintaining written and/or unwritten policies and practices for determining compensation that rely on unduly discretionary decisions, resulting in unequal compensation for black employees; (4) maintaining written and unwritten policies and practices regarding promotions, transfers, and other internal hiring practices that allow supervisors to handpick white candidates over highly qualified black candidates; (5) denying black employees equal training, mentoring, and work assignments, preventing them from advancing within the company; and otherwise discriminating against black employees in the terms and conditions of their employment; and (6) failing to monitor and oversee employment and human resources practices and failing to provide adequate oversight of supervisors to ensure that Company policies are applied consistently and in a nondiscriminatory manner.

Plaintiffs' First Amended Class Action Complaint (Document No. 11) at 9-10. These allegations, and others in the First Amended Class Action Complaint, provide the basis for the claim, in Count One, of "Discrimination against the Named Plaintiffs and the Class in Violation of § 1981." Defendant seeks the dismissal of that class action claim on the basis that: (1) there are no factual allegations about the proposed class – only allegations about the alleged discrimination against Shaw and Kwabena; (2) the class claims are based on a disparate impact discrimination theory which cannot, as a matter of law, be maintained under § 1981; (3) Plaintiffs have not alleged any facts that would satisfy FED. R. CIV. P. 23's commonality, typicality and numerosity requirements; and (4) the proposed class contains, or would contain, claims that are time-barred. While each of these arguments could independently support the dismissal of the class action claims, only two of the

4

arguments will be discussed herein – the absence of particularized class-based allegations, and the absence of allegations that could satisfy the commonality and numerosity requirements of FED. R. CIV. P. 23.

FED. R. CIV. P. 23(a) provides for the maintenance of a class action case if the following, minimum requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

If these initial four prerequisites are met, a separate inquiry is taken to determine if a class action is appropriate. Rule 23(b) provides in this regard:

> A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

"A district court must rigorously analyze Rule 23's prerequisites before certifying a class," *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 310 (5th Cir. 2000), with "[t]he party seeking class certification [having] the burden of showing that the requirements for a class action have been met." *Applewhite v. Reichhold Chemicals, Inc.*, 67 F.3d 571, 573 (5th Cir. 1995). While certification issues may overlap a consideration of the merits, "district courts may evaluate the sufficiency of class allegations at the pleading stage." *Reedy v. Phillips 66 Company*, Civil Action No. H-17-2914, 2018 WL 1413087 *12 (S.D. Tex. Mar. 20, 2018).

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court considered whether the certification of a class alleging sex discrimination under Title VII was "consistent with the Federal Rules of Civil Procedure 23(a) and (b)(2)." At issue in *Dukes* was the certified class action claim that Wal-Mart discriminated against all of its female employees "on the basis of their sex by denying them equal pay or promotions." That discrimination, the plaintiffs in *Dukes* alleged, had its genesis in the discretion Wal-Mart afforded its local managers over pay and promotion decisions, and Wal-Mart's "refusal to cabin its managers' authority," leading to both "an unlawful disparate impact on female employees," and disparate treatment of female employees. *Dukes*, 564 U.S. at 344-45. In determining that there was absence of "commonality," the Supreme Court made it clear that it is not enough for there to be "common" questions, the class members' "claims *must depend* upon a common contention" and that common contention "must be such a nature that it is capable of classwide resolution." *Id.* at 350 (emphasis added). Taking guidance from its prior decision in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 (1982), the Court in *Dukes* explained that in order to maintain a class action claim there had to be a conceptual bridge between "(a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory

6

grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claim will share common questions of law or fact and that the individual's claim will be typical of the class claims," *Id.* 352-53 (quoting *Falcon*, 457 U.S. at 157-158). Such a bridge can generally be established with allegations and proof that "the employer 'used a biased testing procedure to evaluate both applicants for employment and incumbent employees,'" or with "'significant proof that an employer operated under a general policy of discrimination.'" *Id.* at 353 (quoting *Falcon*, 457 U.S. at 159). In determining, in *Dukes*, that there was not conceptual bridge between the named plaintiffs' individual claims and the class claims, the Supreme Court focused on the plaintiffs' failure to identify "a common mode of exercising discretion that pervade[d] the entire company," and the absence of "convincing proof of a companywide discriminatory pay and promotion policy." *Dukes*, 564 U.S. at 356, 359.

Here, as in *Dukes*, the lack of a conceptual bridge between the race discrimination allegations of Shaw and Kwabena and those of the class they seek to represent warrants the dismissal of the class action claims. While Shaw and Kwabena set forth detailed factual allegations about their treatment as employees aboard the Q5000 and Q4000, the allegations about company-wide policies and/or practices are decidedly general and conclusory. Plaintiffs allege in the First Amended Complaint, as set forth above, that there are "policies and practices for performance evaluations of employees that allowed biased and inconsistent determinations," "policies and practices that utilize the inherently unreliable results of the evaluation system to make decisions on promotions and compensation," "policies and practices for determining compensation that rely on unduly discretionary decisions," and "policies and practices regarding promotions, transfers, and other

internal hiring practices that allow supervisors to handpick white candidates over highly qualified black candidates." Plaintiffs also allege that Helix denies "black employees equal training, mentoring, and work assignments, preventing them from advancing within the company," and fails "to monitor and oversee employment and human resources practices and failing to provide adequate oversight of supervisors to ensure that Company policies are applied consistently and in a nondiscriminatory manner." Nowhere in Plaintiff's First Amended Class Action Complaint are there any *factual* allegations about any company-wide police or practice. Under *Twombly*, Plaintiffs' conclusory allegations must be disregarded. Under *Dukes*, Plaintiffs' conclusory allegations do not create the type of bridge between the individual allegations and the class allegations that will support the maintenance of a class action case of race discrimination against Helix.

In addition to this general lack of commonality, Plaintiffs have not alleged, with any facts, that the "class is so numerous that joinder of all members is impracticable." Plaintiffs allege in their First Amended Class Action Complaint that they "estimate that there are at least 50 of the Class." This is the totality of the allegations that have any relation to the numerosity requirement, and there are no allegations that this estimated fifty people have the same, common race discrimination complaints as Shaw and Kwabena. Standing alone, without any other factual basis for that estimate and without any allegations about the connectedness of the conduct about which Plaintiffs complain on behalf of the class, Plaintiffs have not plausibly met the numerosity/commonality requirement with the allegations in their First Amended Class Action Complaint. Moreover, Plaintiffs' attempt to make the required numerosity/commonality showing by and through the Declaration Shaw that was submitted in response to Defendant's Motion to Dismiss is, is essentially ineffectual.

Shaw recounts, in three paragraphs of his Declaration, information he was provided about

race discrimination allegedly suffered by six other Helix employees: La'Daryl White; Demarcus John; Spencer Streams; Jamie Marin; Chris Knight; and Messiah Desford. Plaintiffs offer Shaw's Declaration to support, ostensibly, Rule 23's numerosity requirement. But, Helix has objected to Shaw's Declaration on the basis that it contains hearsay and is based speculation, and seeks to Strike that part of the Declaration on that basis. *See* Defendant's Motion to Strike (Document No. 14). The three bullet-pointed paragraphs on page 2 of Shaw's Declaration (Document No. 12-8 at 2)[2] do

---

[2] In those three bullet-points, Shaw states in his Declaration:

On or around September 18, 2018 La'Daryl White called me and informed me of [a] situation where Spencer Streams (African American) was getting on the elevator with other white [H]elix employees. One in particular, a Crane Operator, made a comment to Spencer telling him to get to the back of the elevator like they use[d] to back in the days. La'Daryl White also told me that Spencer wanted to reach out to me concerning a lot of other situations he encountered. Also, [o]n or around September 23, 2018, La'Daryl White called me and informed me that [Helix] made every employee stay behind after a safety meeting and informed them [Helix] has a lawsuit going on and that it was very serious and that they should refrain from talking with anyone involved. Also, that they should remember that the people that are involved don't work for Helix anymore and that they still do, so they still represent the company. He stated he felt like they were trying to persuade anyone else not to speak out, and to intimidate them. He also mentioned that he and Chris McKnight had to pay out of pocket for his crane license while Helix paid to send other white employees for their licenses.

On or around January 2, 2019, La'Daryl White called me and informed me that he and other African-Americans wanted to come forward and tell their stories of the discrimination they endured. The name he called out was Demarcus John (Floor hand), Spencer Streams (Roustabout), Jamie Marin (OS), Chris McKnight (Crane Operator), and Messiah Desford, aka MOE (Crane Operator). La'Daryl stated that he had a conversation with Messiah Desford, aka, MOE (Crane Operator) and that Moe informed him that on his off time at home he and John McDonald had a conversation. During that conversation John McDonald told him that being that he is the oldest African American employee that has been with Helix, he might need him to help them out. La'Daryl told me that Moe mentioned to him that everyone he started out with are now rig superintendents and higher ups and he still holds a position of crane operator after 15 years.

9

contain hearsay, and are therefore not admissible, *see* FED. R. EVID. 801, 802, as evidence in support of Rule 23's numerosity/commonality requirement. Defendant's Motion to Strike page 2 of Shaw's Declaration (Document No. 14) is therefore GRANTED.

Moreover, even if the contents of page two of Shaw's Declaration were admissible, those paragraphs do not support the conclusion that the "class is so numerous that joinder of all members is impracticable." First, there are only six individuals identified as possible class members in that Declaration. Of those six individuals, there are fact-based race discrimination allegations about only two: Spencer Streams and Messiah Desford, and those fact-based race discrimination allegations have no clear or close relationship to the fact-based race discrimination allegations made by Shaw and Kwabena. As a result, whether the contents of Shaw's affidavit can be viewed as some evidence that there are two potential additional plaintiffs, or six, nothing in Shaw's Declaration satisfies the required showing of commonality and numerosity with respect to those potential additional plaintiffs.

In all, because this case is appreciably no different than *Dukes*, and because neither the allegations in the First Amended Class Action Complaint nor any evidence in the record supports Rule 23's commonality and numerosity requirements, the class action allegations should be dismissed.

---

> On January 2, 2019 Spencer Streams reached out personally and wanted to tell his story and that he had been working offshore for well over 9 years and that Helix was by far the most discriminatory company he had ever worked for. I informed him that he didn't have to go into details, that soon he would be able to tell his full story. Spencer started working with Helix after I was fired. I have never met Spencer before now.

(Document No. 12-8 at 2).

IV. **Discussion – Individual Claims**

On limitations grounds, Helix seeks dismissal of any claim by Shaw under Title VII that pre-dates November 18, 2016, any claim by Kwabena under Title VII that predates November 15, 2016, and any failure to promote claim by either Shaw and Kwabena under § 1981 that predates September 10, 2016. Helix also seeks dismissal of the § 1981 disparate impact claims on the basis that disparate impact claims cannot be brought under § 1981 and dismissal of the Title VII disparate impact claims on the basis that they were not included in any of the Plaintiffs' EEOC Complaints.[3]

A. **Limitations**

Title VII claims, whether they are based on allegations of disparate treatment, disparate impact, hostile work environment, or retaliation, are subject to a statute of limitations that is tied to an administrative complaint process. That means that a plaintiff must first file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of an alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1).[4] Upon obtaining a right to sue letter from the EEOC, a plaintiff then has ninety days to file a Title VII claim in district court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Alleged unlawful employment acts that

---

[3] Plaintiffs' First Amended Class Action Complaint contains six "counts," one of which is a class action claim (count one). In setting forth the remaining counts, Plaintiffs cite to the statutory provisions upon which each count is based. Count two is a retaliation claim by all three Plaintiffs against Helix under § 1981; Count three is a race discrimination claim by Plaintiffs Shaw and Kwabena against Helix under Title VII; Count four is a retaliation claim by all three Plaintiffs against Helix under Title VII; Count five is a hostile work environment claim by Plaintiffs Shaw and Kwabena under Title VII; and Count six is a disparate impact discrimination claim under Title VII. This means that inasmuch as Helix and Plaintiffs argue about whether certain of Plaintiffs' individual discrimination and allegations are time-barred claims under § 1981, Plaintiffs' First Amended Class Action Complaint does not allege, in counts two through six, a race discrimination claim against Helix under § 1981.

[4] The parties do not dispute that the 300 days deadline applies in this case.

11

occur more than three hundred days prior the filing of an EEOC charge are generally time-barred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1)."). Somewhat similarly, complaints of unlawful employment practices that are not included in an EEOC charge cannot generally be raised in federal court. But, whether a claim has been sufficiently raised in an EEOC charge is a not a straightforward assessment. While "the scope of an EEOC complaint should be construed liberally," *Pacheco*, 448 F.3d at 788, claims that are not specifically raised in an EEOC charge and could not "reasonably be expected to . . . grow out of [a] charge of discrimination, *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 444 (5th Cir. 2017), cannot be pursued in federal court due to a failure to exhaust administrative remedies. *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 416 n.1 (5th Cir. 2016) (claims for which a plaintiff has not exhausted his administrative remedies are barred from review in federal court).

As for race discrimination claims under § 1981, there is no administrative exhaustion requirement, and the limitations period is generally four years. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Where, however, a § 1981 race discrimination claim is based on an alleged failure to promote, the limitations period may be as little as two years. *See Fonteneaux v. Shell Oil Co.*, No. Civ. A. H-05-4033, 2007 WL 7210406 *2 (S.D. Tex. Dec. 14, 2007) ("For § 1981 claims based on a employer's failure to promote an employee," a two year statute of limitations applies if the promotion at issue provided "the opportunity for a new an distinct relation between the employer and employer;" otherwise, a four year statute of limitations applies), *aff'd*, 289 F. App'x 695 (5th Cir. 2008).

Here, for purposes of the limitations period under Title VII, the record shows that Shaw filed his EEOC charge on September 14, 2017, and Kwabena filed his EEOC charge on September 11, 2017. Three hundred days prior to the dates those EEOC charges were filed are November 18, 2016, and November 15, 2016, respectively. That means, for Shaw, for his Title VII disparate treatment claims to be timely, the conduct about which he complains had to have occurred on or after November 18, 2016; for Kwabena, for his Title VII disparate treatment claims to be timely, the conduct about which he complains had to have occurred on or after November 15, 2016. Conduct Shaw complains as disparate treatment in violation of Title VII, which occurred before November 18, 2016, is time-barred. Conduct Kwabena complains about as disparate treatment in violation of Title VII, which occurred before November 15, 2016, is also time-barred.

As for the conduct Shaw and Kwabena complain about as supporting their claim for hostile work environment discrimination under Title VII, while it is true that a hostile work environment claim has the same limitations period under Title VII, there is, as argued by Plaintiffs, a continuing violation theory that may apply to hostile work environment claims. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) ("Unlike in a case alleging discrete violations, a hostile environment plaintiff is not limited to filing suit on events that fall within this statutory time period because her claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)); *Skaggs v. Van Alstyne Indep. Sch. Dist.*, No. 4:16-CV-00227-CAN, 2017 WL 77825, at *6 (E.D. Tex. Jan. 9, 2017) ("The United States Supreme Court has made clear that the continuing violation doctrine does not apply to discrimination and/or retaliation claims," but may apply to hostile work environment claims.). Here, both Shaw and Kwabena complain about alleged instances of racial

13

harassment that occurred more than three hundred days prior to their filing of their respective EEOC charges. Those allegations are generally based on the use of racial slurs, as well as alleged disrespectful and unprofessional behavior which Shaw and Kwabena attribute to racially hostility on the part of their co-workers and supervisors.

"[A] plaintiff can support a Title VII claim with conduct occurring more than 300 days before filing an EEOC charge if the plaintiff can allege facts that could show that 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" *Reed v. Brady Trucking, Inc.*, Civil Action No. H-18-4437, 2019 WL 1244100 *5 (S.D. Tex. March 18, 2019) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120-21 (2002)). Here, a close and careful reading of the allegations made by Shaw and Kwabena that would support a hostile work environment claim reveals that the allegations within the 300 day window and those without are not sufficiently similar in nature or kind to support the application of the continuing violation theory. Kwabena alleges that he began working for Helix in 2008, and was, from that time until around 2012, subjected to "daily harassment including, but not limited to, racial jokes and jokes about his sexual orientation." Plaintiffs' First Amended Class Action Complaint at ¶ 57 (Document No. 11). He alleges he complained about the use of racial slurs and there were promises of an investigation, but nothing "came of this alleged investigation." *Id.* at ¶ 58. Kwabena further alleges that his White co-workers were not helpful and refused to take direction from him, *id.* at ¶ 60, that in 2013 his direct supervisor "disagreed with everything Kwabena said or did," and that his supervisor's "racial hatred toward blacks meant that he refused to listen to anything Kwabena had to say," *id.* at ¶ 61, and that in 2014, a co-worker used a racial slur towards him. *Id.* at ¶ 67. Finally, Kwabena alleges that at some unidentified time, he

"faced a hostile work environment in which white employees told Shaw to 'go be segregated with Collins [Kwabena].'" *Id.* at ¶ 72. As for Shaw, he alleges that in October 2015, a White co-worker posted a racial slur on a Facebook page, *Id.* at ¶ 48; in May 2017, another White co-worker "kicked tools his way" and singled him out about how he was wearing his face shield, *Id.* at 49; and at an unidentified point in time he was subjected to the comments by co-workers that he should "'go be segregated with Collins [Kwabena]." *Id.* at ¶ 54. Neither Kwabena's allegations about conduct that occurred before and after November 15, 20016, nor Shaw's allegations about conduct that occurred before an after November 18, 2016, are sufficiently similar in nature or type to support the application of a continuing violation theory. There is no cohesion between the alleged racist comments and conduct, nor is there any unity between the White supervisors and/or co-workers who are alleged to have made racist comments, or who are alleged to have treated Kwabena and Shaw in a racially hostile manner. Taking Plaintiffs' allegations as true in this Rule 12(b)(6) context, there are insufficient allegations of any relatedness between the conduct upon which Shaw's and Kwabena's hostile work environment claims are based. As such, Shaw's and Kwabena's hostile work environment claims should be limited to the allegations in the First Amended Class Action Complaint about conduct or occurrences on or after November 18, 2016 (Shaw), and November 15, 2016 (Kwabena), respectively.

As for the limitations period under § 1981, the record shows that this case was filed on September 10, 2018. Helix maintains in the Motion to Dismiss that the limitations period on Plaintiffs' § 1981 failure to promote/discriminatory pay claim is two years, and that any complained of conduct which occurred prior to September 10, 2016, is time-barred. Plaintiffs argue, in response, that their discriminatory pay claim has a four year statute of limitations under § 1981.

Here, it need not be decided whether a two year or four year statute of limitations applies to Shaw's and Kwabena's failure to promote and/or unequal pay claims. That is because the race discrimination "count" alleged against Helix in Plaintiffs' First Amended Class Action Complaint (count three) was alleged by Shaw and Kwabena under Title VII – not § 1981. *See infra*, page 11, footnote 3. So, inasmuch as both sides argue about whether Shaw's and Kwabena's race discrimination claims under § 1981 are, or should be considered, time-barred, there is no race discrimination count alleged against Helix under § 1981.

### B. Disparate Impact Claims

Plaintiffs have alleged a disparate impact claim under Title VII.[5] Helix argues that the claim is not plausible because Plaintiffs did not allege it in their EEOC charges.

As set forth above, claims that are not raised in an EEOC charge cannot be brought in federal court. *See Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006).[6] Here, the EEOC charges filed by Shaw and Kwabena (Document Nos. 15-3, 15-4, 15-5 and 15-6), when construed *broadly*, arguably included a disparate impact claim.

A prima facie case of disparate impact discrimination requires a showing of "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class."

---

[5] Again, the parties raise issue and argue about the plausibility of a § 1981 disparate impact claim. But, count six of Plaintiffs' First Amended Class Action Complaint only references and relies upon Title VII. As such, there is no § 1981 disparate impact claim alleged by the named Plaintiffs.

[6] Whether a Title VII plaintiff has exhausted his administrative remedies does not relate to subject matter jurisdiction. *Fort Bend County v. Davis*, ___ U.S. ___, 139 S.Ct. 1843, 1850 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast."). Instead, exhaustion of administrative remedies is a procedural predicate to filing suit, and where there has been no exhaustion of a Title VII claim, there can be recovery. *Id.* at 1851.

*Pacheco*, 448 F.3d at 791. While Shaw and Kwabena predominantly complained in the EEOC charges about not being promoted, and being subjected to harassment and racially derogatory comments, Kwabena included an allegation that he had "noticed the rate of promotion for blacks and white differed significantly. White employees climbed the rig hierarchy at a much faster pace than black rig employees" (Document No. 15-6 at 3). This allegation, notwithstanding the absence of any allegations of a facially neutral company policy, *see Pacheco*, 448 F.3d at 792 (a plaintiff need not allege a prima facie case before the EEOC in order to satisfy the exhaustion requirement), relates to how Helix's Black employees were treated, company-wide, as opposed to its White employees, in terms of promotions. Because a disparate impact claim could "reasonably be expected to . . . grow out of " those allegations, the disparate impact claim(s)[7] should not be dismissed on exhaustion grounds.

## V.     Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiffs have not alleged a plausible class action claim, and that some of Plaintiff Shaw's and Kwabena's Title VII race discrimination allegations are time-barred, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Dismissal of Class Action Claim and Certain Other Claims in Plaintiffs' First Amended Class Action Complaint (Document No. 15) be GRANTED in PART, and that the following claims be DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) for failure to state a claim: (1) Plaintiffs' class action claim; (2) Shaw's disparate

---

[7] It may well be that only Kwabena exhausted the disparate impact claim, but that determination will not be made herein where Helix's argument in its Motion to Dismiss is that *none* of the allegations before the EEOC could give rise to a disparate impact claim.

treatment and hostile work environment claims under Title VII based on conduct that occurred prior to November 18, 2016; and (3) Kwabena's disparate treatment claims and hostile work environment claims under Title VII based on conduct that occurred prior to November 15, 2016.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 12th day of July, 2019.

*[signature]*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE